UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LYNN FENDLER,                          )
                                       )
             Plaintiff,                )
                                       )
     v.                                )          No.  4:19 CV 2431 CDP
                                       )
ANDREW M. SAUL, Commissioner           )
of Social Security,                    )
                                       )
             Defendant.                )

## MEMORANDUM AND ORDER

Plaintiff Lynn Fendler brings this action under 42 U.S.C. § 405 seeking

judicial review of the Commissioner's final decision denying her claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*  Because the Commissioner's final decision is not supported

by substantial evidence on the record as a whole, I will reverse the decision and

remand the matter to the Commissioner for further proceedings.

### Procedural History

On July 18, 2016, the Social Security Administration denied Fendler's May

2016 application for DIB in which she claimed she became disabled on April 21,

2016, because of stroke, hand tremors, memory loss, depression, and anxiety.  A

hearing was held before an administrative law judge (ALJ) on May 14, 2018, at

which Fendler and a vocational expert testified.  On October 11, 2018, the ALJ

denied Fendler's claim for benefits, finding that vocational expert testimony supported a conclusion that Fendler could perform work that exists in significant numbers in the national economy.  On June 28, 2019, the Appeals Council denied Fendler's request for review of the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, Fendler claims that the ALJ's decision is not supported by substantial evidence on the record as a whole.  Specifically, Fendler argues that in determining Fendler's residual functional capacity (RFC), the ALJ improperly weighed the opinion evidence of record and failed to properly consider Fendler's subjective statements of symptoms regarding short-term memory loss.  Fendler also argues that the Appeals Council failed to consider new, material, and relevant evidence submitted after the ALJ's decision.  Fendler asks that I reverse the ALJ's decision and award benefits or, alternatively, remand for further consideration.

For the reasons that follow, I will reverse the ALJ's decision and remand the matter for further proceedings.

### Medical Records and Other Evidence Before the ALJ

In January 2015, Fendler suffered a severe cerebrovascular accident (CVA), that is, a stroke, after which she went through a period of treatment and recovery. In July 2015, she returned to her longtime job as a cable-company dispatcher but

on a part-time basis.  She was terminated from this job on April 21, 2016, because of memory deficits that remained after her stroke.  She applied for DIB two weeks later.  She was fifty-four years old.

With the assistance of MERS Goodwill, Fendler obtained part-time work in October and November 2016 as a product demonstrator at Sam's Club and then at a restaurant/deli from November 2016 to February 2017.  Both jobs ended because of Fendler's memory problems and associated stress.  With the assistance of the Brain Injury Foundation of St. Louis, Fendler obtained a part-time job in August 2017 as a high school cafeteria attendant.  She continued to hold this job at the time of the administrative hearing.  She works five days a week, three to four hours a day, and receives accommodations from her supervisor.

Fendler also suffers from anxiety and depression for which her primary care physician prescribes medication.  She was diagnosed with these impairments in 2009, but they worsened after her stroke.  She also has hypertension, which appears to be well-controlled.

With respect to medical records and other evidence of record, I adopt Fendler's recitation of facts set forth in her Statement of Material Facts (ECF 19-1) as admitted by the Commissioner (ECF 22-1).  I also adopt the Commissioner's Statement of Additional Facts (ECF 22-2), which Fendler does not dispute.  These statements provide a fair and accurate description of the relevant record before the

Court.  Additional specific facts are discussed as needed to address the parties'
arguments.

## Discussion

A.    Legal Standard

To be eligible for DIB under the Social Security Act, Fendler must prove
that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001);
*Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).
The Social Security Act defines disability as the inability "to engage in any
substantial gainful activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than twelve months."  42
U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her]
physical or mental impairment or impairments are of such severity that [she] is not
only unable to do [her] previous work but cannot, considering [her] age, education,
and work experience, engage in any other kind of substantial gainful work which
exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine
whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482
U.S. 137, 140-42 (1987).  The first three steps involve a determination as to
whether the claimant is currently engaged in substantial gainful activity; whether

she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert.  *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent conclusions and the Commissioner has adopted one of those conclusions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.    The ALJ's Decision

The ALJ found that Fendler met the insured status requirements of the Social Security Act through September 30, 2021, and had not engaged in substantial gainful activity since April 21, 2016, the alleged onset date of disability. The ALJ found that Fendler's status post CVA, major vascular

neurocognitive disorder, hypertension, anxiety, and depression were severe

impairments but that they did not meet or medically equal a listed impairment in

20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17.)  The ALJ found that Fendler

had the RFC to perform medium work but was limited to frequent climbing of

ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; no exposure

to hazardous machines; and simple, routine, and repetitive tasks.  (Tr. 20.)  The

ALJ determined that Fendler's RFC precluded her from performing her past

relevant work as a service dispatcher.  (Tr. 23-24.)

Considering Fendler's RFC, age, work experience, and education, the ALJ

found vocational expert testimony to support a conclusion that Fendler could

perform work as it exists in significant numbers in the national economy, and

specifically, as a dining room attendant, hand packager, or stubber.  The ALJ thus

found that Fendler was not under a disability from April 21, 2016, through the date

of the decision.  (Tr. 24-25.)

C.    RFC Determination

Fendler challenges the manner and method by which the ALJ assessed her

RFC, and specifically the weight accorded to the opinion evidence of record as

well as to Fendler's own statements of her symptoms.

A claimant's RFC is the most she can do despite her physical or mental

limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ

bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a).  Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).  In addition, because a claimant's RFC is a medical question, the ALJ is "required to consider at least some supporting evidence from a [medical professional]" and "should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted).  *See also Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (ALJ's RFC assessment must be supported by some medical evidence of claimant's ability to function in the workplace).  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell*, 259 F.3d at 712).  The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner. *Pearsall*, 274 F.3d at 1217.

1.    *Opinion Evidence*

The record contains opinion evidence from Josephine Hyde, Psy.D., a psychologist who conducted a one-time consultative psychological evaluation in June 2016; from Margaret Sullivan, Ph.D., a non-examining psychological consultant with disability determinations; and from Sarah Davis, a certified brain injury specialist (CBIS) with the Brain Injury Foundation who worked with Fendler in 2017 and 2018.  In her written decision, the ALJ accorded some weight to the opinions of the consulting psychologists, Drs. Hyde and Sullivan, and little weight to the opinion of the brain injury specialist, CBIS Davis.  For the following reasons, the ALJ erred in these determinations.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including her symptoms, diagnoses, and prognoses; what she can still do despite her impairments; and her physical and mental restrictions.  20 C.F.R. § 404.1527(a)(1) (2017).[1]  The Commissioner must consider various factors in determining what weight to accord medical opinion evidence, including the length of the treatment relationship and the frequency of examination, the nature and extent of the

---

[1] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence.  For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Because the claim under review here was filed before March 27, 2017, I apply the rules set out in 20 C.F.R. § 404.1527.

treatment relationship, whether the source provides support for their findings, whether other evidence in the record is consistent with the source's findings, and the source's area of specialty.  20 C.F.R. § 404.1527(c).  The Commissioner uses these same factors when considering opinions from medical sources who are not acceptable medical sources, such as nurse practitioners and licensed therapists,[2] as well as from nonmedical sources, such as teachers and rehabilitation counselors. 20 C.F.R. § 404.1527(f); SSR 06-03p, 2006 WL 2329939, at *2 (Soc. Sec. Admin. Aug. 9, 2006).  "Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source," for instance where such a source has seen the claimant "more often than the acceptable medical source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole."  20 C.F.R. § 404.1527(f).  Indeed, nonmedical sources "often . . . have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06-03p, 2006 WL 2329939, at *3.

---

[2] For claims filed on or after March 27, 2017, there is no longer a distinction between "acceptable" and "not acceptable" medical sources of opinion evidence.  20 C.F.R. § 404.1520c.

a.    *Dr. Hyde*

At the request of disability determinations, Fendler underwent a consultative psychological evaluation with Dr. Hyde on June 28, 2016.  Fendler reported that she had memory problems and that anxiety made it difficult for her to go places alone for fear of having a panic attack.  Mental status examination was normal in all respects, with Fendler displaying a stable and dysthymic mood, logical thought processes, coherent responses, and fair insight and judgment.  She was able to perform simple calculations, repeat two series of six numbers, and count by threes without difficulty.  Dr. Hyde described Fendler's cognitive capacities as variable, however, noting that Fendler had short-term memory deficits.  She also observed that Fendler was tearful at times but was able to regroup.  At the conclusion of the examination, Dr. Hyde opined that Fendler was mildly impaired in social functioning and in her activities of daily living; moderately impaired in concentration, persistence, and pace; and not impaired in appearance.  (Tr. 721-26.)  The ALJ accorded some weight to Dr. Hyde's opinion regarding Fendler's functional abilities, adopting it in all respects except for the opined limitations in social functioning.  Because Fendler lunches with her sister and visits with a friend once a week, shops with her husband, and cares for her husband and three adult children, the ALJ determined that Fendler had no limitations in social interaction. (Tr. 23.)

Throughout her written decision, the ALJ set out in great detail several findings from Dr. Hyde's evaluation that, in a vacuum, could support a finding of not disabled.  (*See*, *e.g.*, Tr. 18, 19, 21.)  But notably absent from the ALJ's decision is any reference to Dr. Hyde's concluding remarks in her report, wherein she unequivocally stated that she was not rendering an opinion on Fendler's stroke-induced memory issues:  "It was not within the scope of the present evaluation to quantify the level of specific memory impairment claimant continues to display following her CVA" (Tr. 726); and appeared to conclude that Fendler was unemployable at the time given the extent to which her cognitive deficits exacerbated her anxiety and depression:  "Claimant . . . has yet to make a psychological adjustment to her chronic health condition, resulting in significant anxiety and depression.  With treatment, these may remit to the extent that she could perform the minimum required tasks in an employment setting."  (*Id.*)  In addition, Dr. Hyde considered Fendler's prognosis to be "guarded" (*id.*), which is a "prognosis given by a physician when the outcome of a patient's illness is in doubt."[3]  While an ALJ is not required to explain all the evidence in the record, she nevertheless cannot pick and choose only that evidence buttressing her conclusion.  *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019).  *See also Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004) (citing

---

[3] "Guarded prognosis," Medical Dictionary (2009), https://medical-dictionary.thefreedictionary.com/guarded+prognosis.

*Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.")).

Further, Dr. Hyde based her opinion on a one-time psychological evaluation that admittedly did not measure Fendler's memory deficits due to stroke. *Cf. Dolph v. Barnhart*, 308 F.3d 876, 879 (8th Cir. 2002) (appropriate to give less weight to opinion of physician who did not examine claimant for impairment at issue and whose expertise did not coincide with condition). In addition, the evaluation was conducted months before Fendler's failed attempts at part-time work and nearly two years before the administrative hearing. Because an ALJ must determine a claimant's abilities as they exist at the time of the hearing, she cannot rely on remote evidence to determine a claimant's abilities. *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995); *see also Morse v. Shalala*, 32 F.3d 1228, 1230-31 (8th Cir. 1994) (ALJ erred by relying on old medical report and gave no weight to subsequent supporting evidence). Finally, Dr. Hyde did not have the benefit of medical and vocational records from late 2016 to 2018 showing that Fendler continued to complain of memory loss and lack of focus and concentration, lost two part-time jobs because of memory problems and stress, and

continued to experience cognitive deficits that caused difficulties with her current part-time employment.  *See* 20 C.F.R. § 404.1527(c)(6) (ALJ must consider "the extent to which a medical source is familiar with the other information in [the claimant's] case record[.])."

Accordingly, because the ALJ failed to consider the entirety of Dr. Hyde's opinion and failed to properly consider the factors set out in § 404.1527, I cannot say that the weight she gave to Dr. Hyde's June 2016 opinion is supported by substantial evidence on the record as a whole; especially since she gave greater weight to this opinion than to the opinion rendered by CBIS Davis, a source who, as discussed below, had seen Fendler more often, provided a better explanation for her opinion, and whose opinion is more consistent with the evidence as a whole. 20 C.F.R. § 404.1527(f); SSR 06-03p.

> b.    *Dr. Sullivan*

In her written decision, the ALJ accorded some weight to Dr. Sullivan's opinion for the same reasons she accorded some weight to Dr. Hyde's opinion. (Tr. 23.)  As with Dr. Hyde's opinion, the effect of this determination was to accord greater weight to Dr. Sullivan's opinion than that accorded to CBIS Davis's opinion.  This determination is not supported by substantial evidence on the record as a whole.

In her Psychiatric Review Technique Form (PRTF) completed for disability

- 14 -

determinations on July 15, 2016, Dr. Sullivan rendered the same opinion as Dr. Hyde regarding Fendler's abilities in the various domains of functioning.  The bases of Dr. Sullivan's opinion were Fendler's May 2016 Function Report and Dr. Hyde's June 2016 evaluation.  (Tr. 55-56.)  As with Dr. Hyde's opinion, Dr. Sullivan's opinion was rendered months and years before the development of other pertinent evidence.  *See* 20 C.F.R. § 404.1527(c)(3) (when weighing the opinion of a non-examining source, ALJ must evaluate the degree to which the source considered all of the pertinent evidence).  Moreover, because Dr. Sullivan never examined Fendler, her opinion does not constitute medical evidence upon which the ALJ can base her RFC assessment.  *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (opinion of non-treating, non-examining physician who reviewed reports is not "*medical* evidence about how [claimant's] impairments affect his ability to function now.") (emphasis in *Nevland*).

   c. *CBIS Davis*

   In a letter dated May 7, 2018, CBIS Davis recited Fendler's history of working with the Brain Injury Foundation and described Fendler's unsuccessful work attempts.  Davis listed Fendler's cognitive limitations and identified the difficulties Fendler currently experienced working part-time as a high school cafeteria attendant.  With respect to this entry-level work, Davis opined that Fendler's four-hour shift was the extent of her physical and cognitive stamina and

that Fendler would likely be unable to maintain an increase in work hours or responsibilities.  She further opined that Fendler was unlikely to find full-time employment that would provide the type of memory support, prompts, and schedule needed for her to be successful.  (Tr. 985-86.)  The ALJ gave little weight to this opinion, reasoning only that Davis failed to provide functional limitations to support the conclusion that Fendler could not work full time.  (Tr. 23.)  A reading of Davis's letter belies the ALJ's stated reason to discount the opinion.

Impairment-related functional limitations and restrictions relevant to the determination of disability include those involving a claimant's ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.  20 C.F.R. § 404.1513.  In her May 2018 letter, CBIS Davis reported in narrative form that Fendler experienced the following impairment-related limitations:  significant short-term memory deficits, impaired problem solving, difficulty with new learning and prioritizing tasks, difficulty finding words, difficulty initiating tasks, impaired ability to multi-task, limited self-direction, significant cognitive fatigue, difficulty managing interpersonal and social aspects of work, and inability to keep pace.  While not penned in a checklist format, Davis's letter identified several functional limitations that would support a finding

that Fendler could not engage in full-time work.  Indeed, the identified limitations are consistent with other substantial evidence of record, including Dr. Hyde's conclusion that Fendler's cognitive deficits affected her ability to perform even the minimum required tasks for employment, as well as MERS Goodwill's documented reasons underlying Fendler's failed work attempts.

The Regulations do not identify a CBIS as an "acceptable medical source" for purposes of establishing a medically determinable impairment.  *See* 20 C.F.R. § 404.1502(a)(7).  Nor do I know whether a CBIS is considered an "other medical source" or a nonmedical source for purposes of evaluating opinion evidence. Regardless, given CBIS Davis's specialty in brain injury and her experience and familiarity with Fendler's functional ability to perform work as it pertains to her brain injury, she is positioned to provide insight into the severity of Fendler's impairment and how it affects her ability to function.  *See Brown v. Colvin*, No. 15-3528-CV-S-REL-SSA, 2016 WL 7013482, at *19 (W.D. Mo. Nov. 30, 2016).  Her letter of May 2018 did precisely that and included specific functional limitations to support her opinion.  The ALJ's reason to discount CBIS Davis's opinion and accord it less weight than the opinions of a non-examining consultant and a one-time remote evaluation is not supported by substantial evidence.

2.     *Consistency of Subjective Complaints of Memory Loss*[4]

Fendler claims that the ALJ failed to fully consider the effects of her short-term memory loss in determining the consistency of her subjective statements of limiting symptoms.  I agree.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s).  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record.  *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including what are familiarly known as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history

---

[4] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."   SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).   The factors to be considered in evaluating a claimant's statements, however, remain the same.  *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 404.1529. This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

omitted).  *See also* 20 C.F.R. § 404.1529.  If the ALJ finds the statements to be
inconsistent with the evidence of record, she must make an express determination
and detail specific reasons for the weight given the claimant's testimony.  SSR 16-
3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir.
2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  An ALJ must do more
than merely invoke *Polaski* to insure "safe passage for his or her decision through
the course of appellate review."  *Harris v. Shalala*, 45 F.3d 1190, 1193 (8th Cir.
1995).  Instead, she "must set forth the inconsistencies in the evidence presented
and discuss the factors set forth in *Polaski*[.]"  *Cline*, 939 F.2d at 565; *see also*
*Renstrom,* 680 F.3d at 1066; *Beckley v. Apfel*, 152 F.3d 1056, 1059-60 (8th Cir.
1998).  It is not enough to merely state that inconsistencies are said to exist.  *Cline*,
939 F.2d at 565.  While an ALJ need not explicitly discuss each *Polaski* factor, she
nevertheless must acknowledge and consider these factors before discounting a
claimant's subjective complaints.  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir.
2010).  The ALJ failed to do that here.

　　　　In her decision, the ALJ recited Fendler's complaints that the stroke caused
her to lose a great deal of knowledge, that she had difficulty staying on task and
completing tasks, that she could not recall what she has read or watched, that she
needed post-it notes to remind her to take her medications, that she needed
reminders to perform household chores, that she had difficulty multi-tasking, that

she had poor short-term memory, that she lost jobs because she could not perform the mental demands required, and that her current boss provided accommodations because of her poor memory.  Other than referring to Dr. Hyde's June 2016 evaluation during which Fendler recited serial threes, recalled former presidents, and twice repeated a series of numbers, the ALJ cited no record evidence from the relevant period that was inconsistent with Fendler's statements of limitations. Instead, relying only on Fendler's daily activities – that is, that she attends to her personal hygiene, shares chores and shopping duties with her husband, feeds her dogs, takes an hour to prepare meals, does yardwork, reads and watches television, checks Facebook, plays scrabble on the computer, and lunches with her sister and visits with a friend once a week – the ALJ found generally that Fendler's claims were inconsistent with someone who is disabled.  (Tr. 23.)  Notably, the ALJ acknowledged that Fendler's memory issues affected her daily activities in that Fendler needed reminders to perform chores and had trouble comprehending computer-related tasks.  (*Id.*)

Other than Fendler's daily activities, the ALJ's decision lacks any discussion of the other *Polaski* factors in determining the consistency of Fendler's statements of symptoms, that is, her prior work record; the duration, frequency, and intensity of her symptoms; any precipitating and aggravating factors; and any functional restrictions, despite evidence in the record relating thereto, including functional

limitations reported in CBIS Davis's May 2018 letter, MERS Goodwill's records of failed work attempts, and other longitudinal evidence of record that appear to be consistent with Fendler's statements of limitations caused by short-term memory loss.  Without any meaningful discussion of the relevant factors in determining the consistency of Fendler's statements of limitations caused by memory loss, the ALJ's conclusion that Fendler's subjective statements are inconsistent with the record is insufficient to satisfy the mandate of *Polaski*.  *See Cline*, 939 F.2d at 565, 569; *Harris*, 45 F.3d at 1193.

D.     <u>Additional Evidence Submitted to Appeals Council</u>

After the ALJ's adverse decision in October 2018, Fendler submitted a request for the Appeals Council to review the decision.  In an apparent nod to the ALJ's statement that CBIS Davis's May 2018 letter did not contain functional limitations, Fendler's request for review included a letter from CBIS Davis dated January 14, 2019, which was identical to the May 2018 letter but included a list separately setting out Fendler's functional limitations, which were the same functional limitations identified in the narrative portion of the May 2018 letter. (Tr. 9-11.)  In its determination to deny Fendler's request for review, the Appeals Council did not consider the January 2019 letter, reasoning that it did not relate to the period on or before the date of the ALJ's decision, that is, on or before October 11, 2018.  (Tr. 2.)

The Appeals Council must consider additional evidence that is new, material, and relates to the period on or before the date of the ALJ's hearing decision, and which has a reasonable probability of changing the outcome of the decision.  20 C.F.R. § 404.970(a)(5).  Failure to consider such evidence constitutes a basis upon which a reviewing court may order remand.  *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012).

I agree with Fendler that the Appeals Council's reason for failing to consider CBIS Davis's January 2019 letter is faulty given that the substance of the letter, including the time-frame addressed, is identical to Davis's May 2018 letter and differed only in the format by which Davis listed Fendler's functional limitations. Because this matter will be remanded to the Commissioner for further consideration of opinion evidence and to properly assess the consistency of Fendler's subjective statements of symptoms, the Commissioner will have the opportunity to address CBIS Davis's January 2019 letter regardless of the Appeals Council's questionable treatment of it.

## Conclusion

For the reasons stated above, the ALJ's decision is not supported by substantial evidence on the record as a whole.  I will therefore reverse the Commissioner's final decision and remand the matter for further proceedings.

Upon remand, the Commissioner may obtain and provide the parties an

opportunity to submit additional medical and other evidence that addresses

Fendler's ability to function in the workplace in light of her CVA-induced memory

loss and related mental impairments.  Such evidence may include contacting

Fendler's treating physicians and vocational counselors to reevaluate the record

and clarify their limitations in order to ascertain the level of work, if any, Fendler

is able to perform.  *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v.

Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006).  The ALJ is also permitted to

order additional examinations and tests from relevant medical sources, such as a

neuropsychologist, to assist in making an informed decision regarding Fendler's

brain injury and the extent, if any, to which the memory loss caused by this injury

affects her ability to perform work-related activities.  *Dozier v. Heckler*, 754 F.2d

274, 276 (8th Cir. 1985); 20 C.F.R. § 404.1517.

The ALJ must also reevaluate Fendler's RFC, which must include a

reassessment of the record evidence and Fendler's subjective statements of

symptoms in accordance with *Polaski*.  This reevaluated RFC shall be based on

some medical evidence in the record and shall be accompanied by a discussion of

the evidence in a manner that shows how the evidence supports each RFC

conclusion.  The weight accorded to opinion evidence and any reliance thereon in

determining Fendler's RFC must be properly informed and supported by the record

as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of June, 2020.